AVDEL CORPORATION, PLAINTIFF-APPELLANT, v. ELMER MECURE, DEFENDANT-RESPONDENT.

Argued February 9, 1971—Decided May 10, 1971.

266

*Mr. Joseph J. MacDonald* argued the cause for plaintiff-appellant (*Messrs. Harrison, Hartman & MacDonald,* attorneys.)

No appearance on behalf of the defendant-respondent.

The opinion of the Court was delivered by

PROCTOR, J. This case involves the question whether our courts may constitutionally obtain in personam jurisdiction over a New York resident.

Plaintiff, a New Jersey corporation, sued to recover from the defendant Mecure, individually and trading as Mecure Corporation, $1,713.50 allegedly due on a book account for materials sold and delivered. Defendant's residence and his company are both located in the State of New York. Service of process was made by mail and supported by an affidavit of diligent inquiry pursuant to *R. R.* 4:4–4(j), now *R.* 4:4–4 (e), our long-arm rule. Defendant filed an answer denying the allegations of the complaint and asserting as a separate defense, *inter alia,* a lack of jurisdiction over his person. The trial court granted defendant's motion to dismiss the complaint for lack of in personam jurisdiction,[1] and the

---

[1] The trial court was of the opinion that plaintiff's complaint and affidavits did not allege sufficient facts to warrant the court's exercise of jurisdiction. This ruling is difficult to understand, particularly since defendant had failed to answer plaintiff's interrogatories some or which allegedly dealt directly with the question of jurisdiction. Moreover, because of defendant's failure to answer plaintiff's interrogatories, the trial court suppressed defendant's answer, which set up, *inter alia,* the affirmative defense of lack of jurisdiction over the person. This is inconsistent with the court's dismissal on the basis of the affirmative defense.

Appellate Division, in an unreported opinion, affirmed the dismissal for lack of jurisdiction but modified the order "so as only to strike the service of process." We granted plaintiff's petition for certification. 57 *N. J.* 127 (1970).

Plaintiff's allegations are set forth in its complaint and affidavits. Plaintiff manufactures and sells rivets from its Teterboro, New Jersey, plant. The defendant, Mecure, whose place of business is in South Hartford, New York, became interested in buying some of plaintiff's rivets for use in construction of lockers. Accordingly, he requested one of the plaintiff's salesmen to come to a job site in New York for a demonstration. On or about August 16, 1966, the dedendant ordered a number of rivets from the plaintiff's salesman. Two days later the defendant telephoned plaintiff's New Jersey plant and substantially increased his initial order. The invoices totaled an order of $10,210.84. In either August or September, defendant visited plaintiff's plant to discuss matters relating to the contract, although the precise subject of these discussions is not clear.

Plaintiff manufactured approximately 75% of the rivets ordered in its Teterboro plant. They were made specifically for defendant and took about a week to manufacture. The remaining 25% of the rivets were ordered by plaintiff from England to fit defendant's specifications.

In furtherance of the contract and at defendant's request, plaintiff's representatives made two trips from its plant to defendant's job site in New York to deliver the rivets. The deliveries were necessary to keep defendant's production running. Plaintiff's representatives made at least six more visits to defendant's job site to instruct the defendant in the application of plaintiff's product to the job requirements.

Subsequently, on three occasions in the fall of 1966 and winter of 1967, defendant, his wife, and son, journeyed separately to the plaintiff's Teterboro plant to return some of the rivets which had been purchased.

According to defendant's affidavit, his only contacts with New Jersey were a trip to Teterboro and attendance at a

funeral. He does not deny that the former trip was in connection with his contract with plaintiff.

The question before us is whether under the above facts the defendant is amenable to suit in this state.

■ Our long-arm rule, unlike statutes in some other states, permits service on nonresident defendants subject only to "due process of law." *R.* 4:4–4(e). In other words, we will allow out-of-state service to the uttermost limits permitted by the United States Constitution. See *Roland v. Modell's Shoppers World of Bergen Cty.*, 92 *N. J. Super.* 1, 7 (App. Div. 1966). In determining those limits we look first to the rulings of the United States Supreme Court. The decision of that Court in *International Shoe Co. v. State of Washington*, 326 *U. S.* 310, 66 *S. Ct.* 154, 90 *L. Ed.* 95 (1945), was an important departure from the earlier rule expressed in *Pennoyer v. Neff*, 95 *U. S.* 714, 24 *L. Ed.* 565 (1878). *Pennoyer* had stressed the necessity of a defendant's personal presence in a jurisdiction in order for the jurisdiction to have the power to enforce a judgment. See Kurland, "The Supreme Court, The Due Process Clause and the In Personam Jurisdiction of State Courts — From Pennoyer to Denckla: A Review," 25 *U. Chi. L. Rev.* 569, 609 (1958). In *International Shoe,* however, the Supreme Court held that "due process requires only that in order to subject a defendant to judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice.'" 326 *U. S.* at 316, 66 *S. Ct.* at 158, 90 *L. Ed.* at 101, 102. See also, *McGee v. International Life Ins. Co.,* 355 *U. S.* 220, 78 *S. Ct.* 199, 2 *L. Ed.* 2d 223 (1957) and *Hanson v. Denckla,* 357 *U. S.* 235, 78 *S. Ct.* 1228, 2 *L. Ed.* 2d 1283 (1958). *See generally* discussion by Justice Jacobs in *J. W. Sparks & Co. v. Gallos,* 47 *N. J.* 295, 298–304 (1966).

In analyzing the present case, it is important to keep in mind what is and what is not before us. This case does

not involve the question whether a defendant's business activities are substantial enough to justify the exercise of jurisdiction with regard to a non-related cause of action. See, e. g., *Perkins v. Benguet Consol. Min. Co.*, 342 *U. S.* 437, 72 *S. Ct.* 413, 96 *L. Ed.* 485 (1952). *See generally*, 2 *Moore, Federal Practice* § 4.25[5], p. 1172–73; "Developments in the Law — State Court Jurisdiction," 73 *Harv. L. Rev.* 909 (1960); Note, 69 *Colum. L. Rev.* 1412 (1969). What is involved is the question of what contacts with this state by a nonresident defendant are sufficient to justify jurisdiction with regard to a cause of action related to those contacts. The precise question before us as it arises under these facts has never been answered by the United States Supreme Court. *McGee, supra,* indicates that there is sufficient justification for the exercise of jurisdiction if an action is based on a contract which has a substantial connection with the forum state. In that case, a resident of California purchased an insurance policy from an Arizona company. The company was later taken over by defendant, a Texas company, which mailed a reinsurance certificate to the assured who in turn mailed his premiums to the defendant's Texas office. Neither the Arizona nor the Texas company ever had an office or agent in California, and the Texas company had never solicited or done any insurance business in California apart from issuing the policy sued upon. After the assured died, the beneficiary sued the defendant in California, serving it by mail, and obtained a judgment which the Texas courts later refused to enforce. The Supreme Court held that the California court had jurisdiction and that its judgment was entitled to Full Faith and Credit. California contacts included the delivery of the contract there, the mailing of the premiums from there, and the residency of the assured there.

Whether there is a difference between a contract to insure and a contract to purchase goods on the question of in personam jurisdiction need not be decided here; different considerations of fairness may be involved, particularly

where the forum state has enacted special regulatory legislation for the protection of its residents as most states have in the area of insurance. See *Webb v. Stanker and Galetto, Inc.*, 84 *N. J. Super.* 178 (App. Div.) *certif. denied* 43 *N. J.* 263 (1964), *cert. denied* 380 *U. S.* 907, 85 *S. Ct.* 888, 13 *L. Ed.* 2d 795 (1965); 73 *Harv. L. Rev., supra* at 928. *Cf. J. W. Sparks & Co. v. Gallos, supra* at 303. It is clear from *McGee* that due process is satisfied if a contract sued upon has a "substantial connection" with the forum state. The interest of the forum state in the regulation of a special industry such as insurance may be a relevant factor in determining whether the state may constitutionally exercise jurisdiction, but it is only one factor. The absence of such an interest surely does not defeat jurisdiction, and the question remains whether the contact or contacts are sufficient to give the forum state a substantial connection with the contract such that maintenance of the suit does not offend principles of fairness.

In *J. W. Sparks & Co. v. Gallos, supra,* we dealt with the question of what contacts with New York by a New Jersey resident were sufficient for him to be sued for breach of contract in that state. There the plaintiff, a stock brokerage firm, having its principal offices in New York City and a branch office in Morristown, New Jersey, sued a New Jersey resident in the New York courts for money owing on a stock transaction conducted through the Morristown office. Defendant did not answer the New York action and judgment by default was entered against him in a New York City court. The case was appealed to this Court after plaintiff sued in New Jersey to enforce its New York judgment. We held that the New York court could constitutionally obtain in personam jurisdiction over the defendant and that its judgment was entitled to Full Faith and Credit.[2] We reasoned

---

[2] In the interests of justice we remanded the matter for further proceedings to permit the defendant to seek, with plaintiff's cooperation, the reopening of the judgment in New York "to the end that he may there obtain an interpretive determination as to the applicability of

that the defendant was aware that the plaintiff, acting as his agent, would engage in a transaction of purchase and sale in New York and that he therefore purposely availed himself of the privilege of conducting activities in that state. Thus, we held that a New Jersey resident was amenable to suit in New York, for breach of an agreement which he knew or should have known would have substantial effects in New York. It is true that we mentioned New York's interest in regulation of the securities industry, but that factor was not controlling.

Courts of other states, where their long-arm statutes so permit, have generally sustained the exercise of personal jurisdiction over a defendant who, as a party to a contract, has had some connection with the forum state or who should have anticipated that his conduct would have significant effects in that state. *Clinic Masters Inc. v. McCollar*, 269 *F. Supp.* 395 (D. C. Colo. 1967); *National Bank of America at Salina v. Calhoun*, 253 *F. Supp.* 346 (D. C. Kan. 1966); *Hamilton National Bank of Chattanooga v. Russell*, 261 *F. Supp.* 145 (D. C. E. D. Tenn. 1966); *Cox v. District Court of City and County of Denver*, 160 *Colo.* 437, 417 *P.* 2d 792 (1966); *Melfi v. Goodman*, 69 *N. M.* 488, 368 *P.* 2d 582 (1962); *Griffiths & Sprague S. Co. v. Bayly, Marlin & Fay Inc.*, 71 *Wash.* 2d 679, 430 *P.* 2d 600 (1967). *See generally, Annotation,* "Construction and Application, as to Isolated Acts or Transactions, of State Statutes or Rules of Court Predicating In Personam Jurisdiction over Nonresidents or Foreign Corporations upon the Doing of an Act, or upon Doing or Transacting Business or 'Any' Business, Within the State," 27 *A. L. R.* 3d 397 (1969); *Annotation,* "Construction and Application of State Statutes or Rules of Court Predicating In Personam Jurisdiction over Nonresidents or Foreign Corporations on Making or Performing a Contract within the State," 23 *A. L. R.* 3d 551 (1969);

New York's long arm statute to his transaction, and to obtain a determination on the merits of the dispute between the parties, if the statute is deemed applicable." 47 *N. J.* at 306.

*Annotation,* "Validity, as a Matter of Due Process, of State Statutes or Rules of Court Conferring In Personam Jurisdiction over Nonresidents or Foreign Corporations on the basis of Isolated Business Transaction within State," 20 *A. L. R.* 3d 1201 (1968). Indeed, our own Appellate Division has so held in a case where defendant's contacts with this state were less substantial than the defendant's contacts in the present case. *Resin Research Lab. Inc. v. Gemini Roller Corp.,* 105 *N. J. Super.* 401 (App. Div. 1969) ; see also *Corporate Dev. Spe., Inc. v. Warren-Teed Pharm, Inc.,* 102 *N. J. Super.* 143 (App. Div. 1968). This approach comports with what the commentators have recognized, viz, that a nonresident defendant who is not doing business in a state in the traditional sense may nonetheless be amenable to suit in that state where he enters into a contract which will have significant effects in that state. See *Restatement of Law 2d, Conflict of Laws* (1971) § 36, §47, § 49; 2 *Moore, Federal Practice, supra* at § 4.25[5], p. 1172–73; 73 *Harv. L. Rev., supra; 69 Colum. L. Rev., supra.*

■ We think that in the present case the defendant's contacts with this state are far greater than in either *McGee* or *J. W. Sparks & Co.* Although New Jersey has no special interest in the manufacture of rivets, as a state may have in the fields of insurance and securities transactions, defendant's contacts with this state were sufficient to meet the constitutional requirement of fairness. Defendant ordered rivets from the plaintiff corporation and he knew that his order would have significant effects in New Jersey since it was anticipated that the plaintiff would either manufacture the rivets here or obtain them from some other source. As it turned out, a large number of the rivets were manufactured in New Jersey and the remainder had to be specially ordered. Moreover, defendant actually entered this state to discuss his contract with the plaintiff. At defendant's request, plaintiff's representatives delivered rivets to defendant's job sites in New York. Finally, defendant and members of his family traveled to plaintiff's plant in New Jersey

and returned substantial numbers of the rivets which had been purchased. From what we have said, it should be clear that the commercial transaction sued upon here had substantial incidents in both New York and New Jersey, which is not uncommon because the states are contiguous. It is a fact of modern economic life that many commercial enterprises have out-of-state business contacts and that these enterprises frequently contract for goods in other states by telephone or by mail. That is what occurred in the present case, and although the transaction was essentially interstate, we have no difficulty in holding defendant amenable to suit in this state since he ordered a product which he knew would have substantial business effects in this state, and followed up his order wtih numerous contacts here in relation to that contract. In other words, he purposely availed himself of the opportunity to engage in a commercial transaction involving activities in this state. See *Hanson v. Denckla, supra,* 357 *U. S.* at 253, 78 *S. Ct.* at 1239, 2 *L. Ed.* 2d at 1298. Moreover, there is certainly no special inconvenience to defendant since the two states are contiguous. Under all these circumstances, we are convinced that permitting the plaintiff to maintain this suit in our courts does not offend "traditional notions of fair play and substantial justice."

One other point deserves mention. Since defendant represented himself as Mecure to the plaintiff, he was sued individually in that name and as trading as Mecure Company. In his answer and affidavit he uses the name Mecure. However, in his motion to dismiss, he indicated that his dealings with the plaintiff were through a corporation which he owned. Plaintiff made diligent efforts to ascertain whether defendant was incorporated, but was notified by the State of New York that no "Mecure Corporation" existed in that State. Later, plaintiff was notified by the county clerk of Washington County, New York, that a "Mercure Erection Co. Inc." (emphasis added) was incorporated in New York in the same town in which defendant maintains his office. In view of plaintiff's good faith efforts and defendant's lack

of cooperation, including the failure to answer interrogatories, plaintiff should be permitted to amend the complaint to join the corporate entity if further investigation of the facts warrants that step.

The judgment of the Appellate Division is reversed and the cause is remanded for trial.

*For reversal and remandment*: Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—6.

*For affirmance*: None.