221 N.J. Super. 513 (1987)
535 A.2d 26
EVAN MAKOPOULOS, AN INFANT BY HIS GUARDIAN AD LITEM, PAULA MAKOPOULOS, PLAINTIFF-APPELLANT,
v.
WALT DISNEY WORLD, INC., JOHN DOE, A FICTITIOUS NAME, BEING THE CHARACTER "MICKEY MOUSE", AND WALT DISNEY PRODUCTIONS, INC., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 2, 1987.
Decided December 10, 1987.
*514 Before Judges PRESSLER, BILDER and MUIR, Jr.
*515 Anthony J. Macri argued the cause for appellant (McHugh and Macri, attorneys; Anthony J. Macri, on the brief).
Richard A. Tanner argued the cause for respondent Walt Disney World Co.
The opinion of the court was delivered by BILDER, J.A.D.
This appeal requires us to consider whether national advertising which comes into New Jersey, particularly television advertising originating from New York stations but clearly intended for a market area which includes northern New Jersey, creates sufficient contacts with this state to justify in personam jurisdiction.
Defendant Walt Disney World is the owner and operator of a Florida resort complex.[1] Apart from advertising activities which reach into this state, it has no contacts with New Jersey. It is not qualified to do business in the State of New Jersey; has neither incurred nor paid taxes here; has not appointed an agent for the service of process in this state; is not listed in any New Jersey telephone directories; has no assets, office or place of business in New Jersey; has no officers, agents or employees in the state; maintains no bank accounts in the state; and owns no real property in New Jersey. It has sent informational material with respect to its entertainment complex to travel agents in New Jersey, but pays no commissions to them if they book reservations to its complex. Its conduct appears to have remained substantially the same as it was when we considered a similar jurisdictional question in Serbin v. Walt Disney World, 159 N.J. Super. 88 (App.Div. 1978), certif. den. 78 N.J. 337 (1978). And, as in Serbin, the claim asserted is for personal injuries. It is alleged that plaintiff, an infant then four years *516 old, was assaulted by one of defendant's employees while visiting the Florida complex.[2] Unless the invitation contained in defendant's national advertising campaign is a sufficient solicitation of business within our state to justify jurisdiction  to comport with traditional notions of fair play and substantial justice, see International Shoe Co. v. Washington, 326 U.S. 310, 316-317, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) and discussion Charles Gendler & Co. v. Telecom Equipment Corp., 102 N.J. 460, 469-481 (1986)  the appeal is indistinguishable from Serbin and can be summarily disposed of on the authority of that opinion.
The general notion that solicitation directed to New Jersey residents can support jurisdiction over foreign resorts has been judicially recognized. See Radigan v. Innisbrook Resort and Golf Club, 150 N.J. Super. 427 (App.Div. 1977); Schaffer v. Granit Hotel Inc., 110 N.J. Super. 1 (App.Div. 1970); Oliff v. Kiamesha Concord, Inc., 106 N.J. Super. 121 (Law Div. 1969). However such cases can be readily distinguished by the directness of the solicitation. Defendant is careful in its proofs to note that its advertising is not directed specifically to residents of New Jersey. What we must consider is whether this clear difference is in a legal sense a distinction. We are satisfied from this record that it may not be  at least not in 1987 when we can note the pervasive influence of television advertising campaigns which reach with intimacy into our kitchens, dining rooms, living rooms and, indeed, bedrooms.
We also note the apparent irrelevancy of defendant's argument that its television advertising does not originate in New Jersey and is not specifically directed at this state. We assume television advertising that would have been seen in Parsippany, plaintiff's residence, originated in New York. To television, geographic state boundaries are meaningless, only distance and transmission power matter. Commercial television broadcasts *517 transmitted from New York City are received in parts of New York, New Jersey and Connecticut  it is a tri-state area. That is the market area and that is the area to which the advertising is directed. Defendant's advertising may not be specifically directed to New Jersey residents but it is generally so directed, and indeed so intended, and, as we have noted, in a most intimate manner. It is difficult to perceive a distinction between the drummer of earlier days whose presence at the front door created jurisdiction and the modern television campaign which seeks the same end and comes into the home to do it.
Speaking in Charles Gendler & Co. v. Telecom Equipment Corp., supra, our Supreme Court said the connection to our forum must arise from purposeful acts of the defendant such as would cause defendant to reasonably anticipate being sued here. By its interstate advertising, defendant may be successfully enticing people to visit its Florida resort. That some harms would follow and would result in claims in their home states, sites to which the advertising was intended to reach, was not only to be anticipated, it was predictable.
Today's jurisdiction is necessarily a function of today's technology and economic practice. Just as modern distribution systems have led to expansion of product liability jurisdiction, see World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297-298, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980); Charles Gendler & Co. v. Telecom Equipment Corp., supra 102 N.J. at 477-481, so too the national media campaigns may well result in the expansion of personal jurisdiction over those who negligently perform services. It would seem that by its national campaign, defendant sought guests from New Jersey, it enticed them in New Jersey and, when it was effective, set the desired relationship in motion in New Jersey. Such acts may therefore be sufficient to permit jurisdiction. When the operator of a resort seeks to expand the market for its services to other states, it is not unreasonable to subject it to suit in one of those states when that service becomes the source of injury to the consumer, see Burger King Corp. v. Rudzewicz, 471 U.S. 462, *518 473-475, 105 S.Ct. 2174, 2182-83, 85 L.Ed.2d 526 (1985); World-Wide Volkswagen Corp. v. Woodson, supra.
Thus it may well be that advertising, and particularly television advertising, can create sufficient contacts to justify in personam jurisdiction. See BLC Insurance Co. v. Westin, Inc., 359 N.W.2d 752, 754-755 (Minn. Ct. App. 1985), pet. for rev. den. (Minn.S.Ct. 1985), cert. den. 474 U.S. 844, 106 S.Ct. 132, 88 L.Ed.2d 109 (1985); see also Maro v. Potash, 220 N.J. Super. 90, 96-97 (Law Div. 1987); Gavigan v. Walt Disney World, Inc., 646 F. Supp. 786, 789 (E.D.Pa. 1986); Rutherford v. Sherburne Corp., 616 F. Supp. 1456, 1461-1462 (D.C.N.J. 1985); Reed v. American Airlines, Inc., 197 Mont. 34, 640 P.2d 912, 913-914 (1982); Garrett v. Key Ford, Inc., 403 So.2d 923 (Ala. Civ. App. 1981); Hutter Northern Trust v. Door County Chamber of Commerce, 403 F.2d 481, 485 (7th Cir.1968); Soares v. Roberts, 417 F. Supp. 304 (D.R.I. 1976).
However, we are not satisfied that the record in its present state is sufficiently complete to permit a fair determination of the jurisdictional issue. Perhaps because of the novelty of the issue, discovery has not clearly illuminated the operative facts. In its answers to interrogatories, defendant acknowledges the existence of television advertisements which it assumes were seen in New Jersey, but its emphasis is on the irrelevant notions that this state was not "a particular target" of the national advertising and the programs were not broadcast by New Jersey-based television stations. Similar admissions were made as to cable television. Its answers also acknowledge that it advertised in magazines and newspapers which circulate in this state, but it furnishes no indication of the extent of such solicitations. Not only has there been no real inquiry into the extent and nature of the solicitations, but there has been no inquiry into the success of the advertising in luring New Jersey residents to the Florida complex. See Pedelahore v. Astropark, Inc., 745 F.2d 346, 349 (5th Cir.1984). Also, there might be some relationship between defendant and the Disney Channel and part of the purpose of the latter might be to advertise *519 defendant's facility. It might also be useful to know what market share of the defined television marketing area is represented by northern New Jersey or, more particularly, the Parsippany area, and the role northern Jersey plays in the marketing of television advertising in the tri-state area.
The evidence before us indicates that there may have been enough solicitation in this state in the form of media advertising to justify jurisdiction if the solicitation was effective in enticing plaintiff to the Florida facility of defendant at which its employee assaulted him. A more complete record may show it is appropriate for us to reconsider Serbin. Sufficient facts are suggested which if properly developed might permit a conclusion that defendant purposely directed his solicitation to residents of this forum, see Burger King Corp. v. Rudzewicz, supra 471 U.S. at 472-473, 105 S.Ct. at 2182-83, and could reasonably expect to be "haled into court" here. See World-Wide Volkswagen Corp. v. Woodson, supra 444 U.S. at 297, 100 S.Ct. at 567. We are therefore remanding the matter for further discovery and further consideration of the jurisdictional issue by the trial judge in light of the facts which will be disclosed and the views expressed herein.
If jurisdiction is found to exist, the trial court will be required to consider the related issue of forum non conveniens. Although this issue has been fully briefed before us, we feel it may be more appropriately dealt with by the trial court on the basis of the facts as they appear at that time. We note however that the application of this doctrine would require a showing that this forum would be demonstrably inappropriate for the trial of the matter. See Radigan v. Innisbrook Resort and Golf Club, supra 150 N.J. Super. at 430-431.
The order appealed from is reversed. The matter is remanded for further proceedings consistent with this opinion. The trial judge is directed to set an expedited discovery schedule with respect to the jurisdictional question and to proceed expeditiously *520 thereafter in resolving that issue. Jurisdiction is retained.
NOTES
[1] Although other defendants were named in plaintiff's suit, only the dismissal of this defendant is disputed on appeal. We also note that the correct name of the entity which is defending this action is Walt Disney World Co.
[2] Plaintiff's claim is that he was thrown against a wall by Mickey Mouse.