**James D. MESALIC, Appellant,**

v.

**FIBERFLOAT CORP. d/b/a Harley Boat Company, Howard D. Harley, individually, jointly and severally, Appellee.**

**Nos. 89–5362, 89–5660 and 89–5661.**

United States Court of Appeals, Third Circuit.

Argued Dec. 15, 1989.

Decided March 7, 1990.

Herbert J. Stern (argued), and Richard K. Coplon, Hellring Lindeman Goldstein Siegal Stern & Greenberg, Newark, N.J., for appellant.

Gabriel H. Halpern (argued), Fox and Fox, Newark, N.J., for appellee.

Before HIGGINBOTHAM, Chief Judge,* and SCIRICA, Circuit Judge, and HUTTON, District Judge.**

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Chief Judge.

Appellant, James D. Mesalic (Mesalic), appeals from a final order of the United States District Court for the District of New Jersey dismissing this diversity complaint for lack of in personam jurisdiction over the appellees, Howard Harley (Harley) and Fiberfloat Corp., d/b/a Harley Boat Company (Fiberfloat). 708 F.Supp. 641.[1] We will reverse the district court's order.

### I.

Mesalic is a New Jersey citizen. The president of Fiberfloat, Howard Harley, is a citizen of the State of Florida. Fiberfloat, a Florida corporation with its principal place of business in Bartow, Florida, advertises its products for sale in *Boating*, a magazine aimed at a national audience. *Boating* is not directed specifically to New Jersey residents. However, at oral argument, appellees conceded that the magazine was distributed in New Jersey. Because Fiberfloat has no showrooms or distribution network in New Jersey, Mesalic went to its manufacturing facility in Bartow, Florida to purchase a boat. Harley quoted a price for Mesalic and the next day, he signed a contract to purchase a 42-foot custom built, luxury power boat. The purchase was conditioned upon Mesal-

ic's satisfaction with a sea trial of the same model boat. The sales agreement was silent as to which state's law would govern interpretation of the contract. However, the warranty gives Fiberfloat the right to require the customer to deliver the vessel to Fiberfloat's facility in Florida for repairs.[2] The total cost of the boat was approximately $235,000 including $1,650 for delivery.

After conducting a trial run, Mesalic made a down payment and Fiberfloat began construction of his boat. While the boat was under construction, Mesalic made several trips to Florida to inspect the construction and to make progress payments. At other times, however, the parties communicated by mail and by telephone. Fiberfloat wrote to Mesalic at his home in Flanders, New Jersey on January 27, March 2, April 1, and May 18, 1988. At all times Fiberfloat knew that the boat was to be used in New Jersey as Mesalic lived and had made docking arrangements there.

On or about March 5, 1988, Mesalic made final payment on the vessel in Florida and then tested the vessel for several days. Mesalic's affidavit indicates that the boat had hull leaks and problems relating to the steering mechanism, the fuel lines, the propellers, and the electrical system. Mesalic did not seek to reject or seek to revoke acceptance of the vessel at that time but instead instructed Fiberfloat to correct certain deficiencies and to add $2,000 worth of custom accessories. Mesalic also requested that a Fiberfloat mechanic transport the vessel to New Jersey and it was, in fact, delivered at the end of April, 1988.[3]

---

* Honorable A. Leon Higginbotham, Jr., became Chief Judge of the Third Judicial Circuit on January 16, 1990.

** Honorable Herbert J. Hutton, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

1. Plaintiff named Harley Boat Company as the corporate defendant in this action. Defendant informed the district court that the actual name of the business is Fiberfloat. As the district court noted, for purposes of clarity, we will refer to the corporate defendant as Fiberfloat.

2. The Warranty provides:

STEPS TO OBTAIN PERFORMANCE OF HARLEY BOAT LIMITED WARRANTY ... The boat is delivered, at Harley Boats discretion, (i) to Harley Boats factory in Bartow, Florida, or other facility selected by Harley Boats, with all transportation charges to and from the factory or other facility prepaid. The selection is at Harley Boat's option.

3. The district court stated that the delivery of the boat in New Jersey was the first meaningful contact between Fiberfloat and New Jersey. He found that Mesalic did not seek to reject or revoke acceptance of the vessel but merely gave Fiberfloat a list of repair items and requested

After the boat's arrival in New Jersey, the engines would not start. A Fiberfloat employee unsuccessfully attempted to get the boat started. Another Fiberfloat mechanic also worked on the boat in New Jersey from May 7 through May 27, 1988. After the engine was finally started, other defects were discovered, including leaks and delamination. During a sea trial of the vessel, the steering mechanism failed and water penetrated the hull. Mesalic requested that the mechanic transport the vessel back to Fiberfloat's Florida facility.

While the vessel was en route to Florida, Mesalic informed Fiberfloat that he no longer wanted the boat. Mesalic brought suit for damages on October 18, 1988 in the District of New Jersey alleging, *inter alia,* breach of contract and seeking recision. Mesalic contends that the vessel contained major latent defects. Fiberfloat filed an answer and motion to dismiss alleging lack of in personam jurisdiction. On March 29, 1989 the district court granted Fiberfloat's motion and dismissed the case pursuant to Fed.R.Civ.P. 12(b)(2).

Subsequent to the district court's dismissal, Mesalic filed a notice of appeal and motions pursuant to Fed.R.Civ.P. 15 and 59, seeking to amend the complaint or to alter and amend the judgment. Mesalic moved in the alternative under Rule 60, for relief from final judgment. Fiberfloat filed a timely response and cross-motion for imposition of Rule 11 sanctions. The district court denied all motions.

## II.

The issue on appeal is whether the district court properly determined that Fiberfloat lacked the requisite minimum contacts with New Jersey to subject it to suit there.

that the boat be delivered in New Jersey. The district court noted further that under the terms of N.J.Stat.Ann. § 12A:2–606 (1962), Mesalic failed to make an effective rejection of the vessel, and can be said to have accepted the vessel, albeit on the condition that the requested repairs be made. *See* N.J.Stat.Ann. § 12A:2–607(2) (1962). The district court concluded that "for purposes of this motion, delivery of the vessel will be deemed to have been effected in Florida." Dist.Ct.Op. at 642, n. 2, Appendix (App.) at 117.

Because the district court dismissed the complaint for lack of personal jurisdiction, the court had no occasion to rule on the substantive validity of the plaintiff's claim. The personal jurisdiction question is the principal issue before us now.[4] We have plenary review of this issue of law.

## III.

### A.

Rule 4(e) of the Federal Rules of Civil Procedure authorizes a district court to assert personal jurisdiction over a non-resident to the extent permissible under the law of the state where the district court sits. New Jersey's long-arm rule, applicable in the instant case, states in relevant part:

> Service of summons, writs and complaints shall be made as follows:
>
> ... Upon a domestic or foreign corporation, by serving ... any person authorized by appointment or by law to receive service of process on behalf of the corporation ... consistent with due process of law....

N.J. Civil Practice Rule 4:4–4(c). New Jersey's long-arm rule has been interpreted as extending jurisdiction over non-residents "to the uttermost limits permitted by the United States Constitution." *Charles Gendler Co. v. Telecom Equity Corp.,* 102 N.J. 460, 469, 508 A.2d 1127, 1131 (1986) (quoting *Avdel Corp. v. Mecure,* 58 N.J. 264, 268, 277 A.2d 207, 209 (1971)). Accordingly, this court can exercise jurisdiction over Fiberfloat only if Mesalic can demonstrate that Fiberfloat's contacts with New Jersey are sufficient to satisfy the Due Process Clause of the United States Constitution.[5]

4. *See infra* note 16.

5. The New Jersey Supreme Court has made it clear that New Jersey courts look to federal law for interpretation of the limits on in personam jurisdiction. *See Avdel Corp.,* 58 N.J. at 268, 277 A.2d at 209; *Gendler,* 102 N.J. at 469, 508 A.2d at 1138; *Lebel v. Everglades Marina,* 115 N.J. 317, 322, 558 A.2d 1252, 1254 (1989).

In cases where the defendant has properly raised a jurisdictional defense, "the plaintiff bears the burden of demonstrating [that] contacts with the forum state [are] sufficient to give the court in personam jurisdiction." *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 63 (3d Cir.1984) (quoting *Compagnie des Beauxites de Guinee v. l'Union Atlantique S. A. d'Assurances*, 723 F.2d 357, 362 (3d Cir.1983)). A plaintiff can meet this burden by establishing general or specific jurisdiction over the defendant. As this court has explained:

> [G]eneral jurisdiction, 'exists when the claim does not arise out of or is unrelated to the defendant's contacts with the forum.... '[S]pecific jurisdiction,' is invoked when the claim is related to or arises out of the defendant's contacts with the forum.

*Dollar Savings Bank v. First Security Bank of Utah*, 746 F.2d 208, 211 (3d Cir. 1984) (citations omitted). Fiberfloat correctly notes that specific jurisdiction is at issue in the present case.

### B.

The minimum contacts framework, as first set out in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), provides the standard for determining specific jurisdiction. Recently, the Supreme Court described the standard as the "constitutional touchstone" for the due process analysis of personal jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985).

In *Burger King*, the Supreme Court held that a Florida district court's exercise of jurisdiction over a Michigan resident was constitutional where the Michigan resident had signed a long-term franchise contract which involved substantial connection to a Florida corporation. *Id.* at 479, 105 S.Ct. at 2185. The Court reasoned that the minimum contacts at issue must have a basis in "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state." *Id.* at 475, 105 S.Ct. at 2183 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958)). Although the Court held that a single contract with a forum state resident may subject an out-of-state party to the jurisdiction of that state's courts in a dispute arising from that contract, the Court cautioned that a contract alone cannot "automatically establish sufficient minimum contacts in the other party's home forum...." *Burger King*, 471 U.S. at 478, 105 S.Ct. at 2185. Additionally, courts must evaluate "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing ... in determining whether the defendant purposefully established minimum contacts within the forum." *Id.* at 479, 105 S.Ct. at 2185.

This court considered the issue of minimum contacts, using the rationale in *Burger King* in an action where a New Jersey telephone company sued a California hotel seeking to recover amounts due for use of business phones or, alternatively, possession of the phone system.[6] The court held that the district court properly asserted specific jurisdiction over the California hotel. The court reasoned that where the contract between the two parties involved monitoring the phone system from the New Jersey company's home offices and "created continuing obligations" between the parties for the duration of the ten year contract, there was a sufficiently close nexus between the contract dispute and New Jersey. *Associated Business Tel. Sys.*, 861 F.2d at 797.[7]

### IV.

The district court in the case at bar, found that Fiberfloat maintained no offices, production facilities or sales orga-

---

**6.** *See Associated Business Tel. Sys. v. Greater Capital Corp.*, 861 F.2d 793 (3d Cir.1988).

**7.** *See also North Penn Gas Company v. Corning Natural Gas Corp.*, 897 F.2d 687, 691 (3d Cir.

1990) (per curiam) (minimum contacts established with Pennsylvania absent "physical" presence when accompanied by facts indicating purposeful availment).

nization in New Jersey. In addition, the court held that Fiberfloat's New Jersey contacts were "insignificant contacts" [8] and militated against finding personal jurisdiction, when considered in light of the concepts of fairness and reasonableness. Dist. Ct.Op. at 643, App. at 120.

In dismissing the contacts in New Jersey as insignificant, the district court was particularly swayed by the Fourth Circuit's policy argument in *Chung v. NANA Development Corp.*, 783 F.2d 1124, 1129 (4th Cir.1986), *cert. denied*, 479 U.S. 948, 107 S.Ct. 431, 93 L.Ed.2d 381 (1986). In *Chung*,[9] the court found that there were insufficient contacts for a district court in Virginia to assert personal jurisdiction over an Alaskan corporation who made an isolated sale of frozen antlers to a Virginia resident. Applying the *Chung* rationale to the case at bar, the district court reasoned that "Fiberfloat's attempt to accommodate Mesalic should not be turned against it ... [to find jurisdiction in] a state with which it otherwise had no minimum contacts." District Ct.Op. at 644, App. at 121. We disagree with the district court's application of *Chung* since the facts are so different from the present case. In *Chung*, a common carrier made delivery and in addition, the Alaskan seller never entered the state nor had any other contact with the forum state.

In the present case the record is replete with evidence of Fiberfloat's purposeful connection to New Jersey, including: (1) written correspondence from Fiberfloat on January 27, March 2, April 1, and May 27, 1988 to Mesalic's New Jersey residence; (2) delivery of the vessel by a Fiberfloat employee to the appellant in New Jersey and this same employee's attempt to repair the boat in New Jersey; and (3) work performed by another Fiberfloat mechanic in New Jersey from May 7 through May 27, 1988.[10] We conclude that the fact that Fiberfloat delivered the boat to New Jersey and repaired the vessel in New Jersey as an accommodation to Mesalic does not preclude such contacts from being sufficient minimum contacts to establish personal jurisdiction.[11] We are not persuaded by the district court's conclusion that asserting jurisdiction when the seller attempts to make repairs in the forum state would be a "disincentive for out-of-state businesses" and would impinge "upon commercial activity and commercial courtesy." Dist.Ct.Op. at 644, App. at 121.

While the contract between the parties may not have obligated Fiberfloat to deliver and repair the boat in New Jersey, nonetheless they did. This conduct—accommodating the buyer—is not surprising in view of today's commercial realities. Competitive business practices may make it advantageous for out-of-state manufacturers to

**8.** We agree with the district court's conclusion that the analysis of Fiberfloat's contacts with New Jersey is equally applicable to Howard Harley's contacts with the state.

**9.** A Virginia resident initiated contacts with the corporation and traveled to Alaska to make the purchase of frozen antlers. The antlers were not ready at the time the Virginia resident was ready to leave Alaska so the corporation agreed to ship them to Virginia through a common carrier. The shipment spoiled en route and the resident filed suit against the Alaska corporation in Virginia. In denying jurisdiction the court reasoned that "[i]f a party's slightest gesture of accommodation were to impose personal jurisdiction, commercial dealings would soon turn unobliging and brusque." *Chung*, 783 F.2d at 1129.

**10.** Mesalic also argues that Fiberfloat's marketing strategies in New Jersey (i.e. advertisements in a national magazine and attendance at a

regional boat show) and its knowledge that its product would be sold in New Jersey are additional contacts upon which to base jurisdiction. The marketing strategy provides, at best, tangential support for the assertion of personal jurisdiction.

We have no evidence of the extent of Fiberfloat's solicitation in *Boating* magazine nor do we know how much business the corporation derives from its national advertising. Therefore there is no basis to conclude that the advertisement was sufficient to establish minimum contacts in New Jersey. *See Makopoulos v. Walt Disney World*, 221 N.J. Super. 513, 535 A.2d 26 (1987). Regarding Fiberfloat's attendance at a regional boat show, Fiberfloat did not attend the boat show, which was in New York, until after this action was filed. Accordingly, this conduct is not sufficient to establish personal jurisdiction.

**11.** The district court characterized the New Jersey contacts as an accommodation to Mesalic.

travel to other states to make repairs and to service the products in issue. In addition, to achieve customer satisfaction, a manufacturer may make repairs at a location that is convenient to both parties. Under such circumstances, we must assess the contacts actually made. We are not narrowly confined to reviewing the contractual obligations of the parties, as suggested by the district court. Our focus is not on the rights of the parties under the contract, but instead our focus is on whether there were sufficient minimum contacts between Fiberfloat and New Jersey.

The contacts between Fiberfloat and New Jersey are, indeed, sufficient for that state to exercise personal jurisdiction over Fiberfloat. As the Court held in *Burger King*, "[j]urisdiction is proper ... where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Burger King*, 471 U.S. at 475, 105 S.Ct. at 2183 (emphasis in original) (citing *McGee v. International Life Insurance Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957) and *Kulko v. California Superior Court*, 436 U.S. 84, 94, n. 7, 98 S.Ct. 1690, 1698, n. 7, 56 L.Ed.2d 132 (1978)). The contacts at issue here—mail and telephone communications between New Jersey and Florida, delivery of the boat in New Jersey and substantial repairs by Fiberfloat mechanics in New Jersey on two occasions—are not "insignificant contacts" as they were characterized by the district court. These contacts properly come under what the Supreme Court describes as contacts "that create a substantial connection with the forum state." *Id.* at 475–76, 105 S.Ct. at 2183–84. The connection was one in which Fiberfloat, through its mechanics, availed itself of the privilege of conducting activities in New Jersey. As the Court noted in *International Shoe*, "to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of the state." 326 U.S. at 319, 66 S.Ct. at 159.

Having determined that there were sufficient minimum contacts, we must determine whether the assertion of personal jurisdiction accords with the notions of "fair play and substantial justice." *International Shoe Co.*, 326 U.S. at 316, 66 S.Ct. at 158 (citing *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)). This determination requires an evaluation of the following factors: "the burden on the defendant, the interests of the forum State, ... plaintiff's interest in obtaining relief[,] ... 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies.'" *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 113, 107 S.Ct. 1026, 1034, 94 L.Ed.2d 92 (1987) (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980)).

Consideration of these factors in the present case makes clear that it is reasonable to assert jurisdiction over Fiberfloat. The burden on Fiberfloat to defend the action in New Jersey, is not severe by today's standards. This is not a case where the defendant is required to defend itself across national borders. *See Asahi*, 480 U.S. at 114, 107 S.Ct. at 1034 Fiberfloat has stressed the difficulty of litigating this case in New Jersey rather than in Florida, due to the expense of transporting documents and witnesses from Florida to New Jersey. While this is a valid consideration, we do not believe that litigation in New Jersey would impose an unfair burden on Fiberfloat. The proper means to resolve the competing forum preferences of the parties may be through a motion for change of venue. *See* 28 U.S.C. § 1404(a) (1982).[12] Jurisdictional issues are not to be confused with § 1404(a) motions.

New Jersey has a valid interest in protecting its residents from out of state manufacturers. "We cannot conclude that [New Jersey] had no 'legitimate interest in

---

**12.** 28 U.S.C. § 1404(a) states in relevant part: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

holding [Fiberfloat] answerable on a claim related to' the contacts [the defendants have] ... established in that state." *Burger King*, 471 U.S. at 482–83, 105 S.Ct. at 2187 (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984)); *see also McGee v. International Life Insurance Co.*, 355 U.S. at 223, 78 S.Ct. at 201 (noting that a state frequently will have a "manifest interest in providing effective means of redress for its residents"). Nor is this a dispute where the forum state's interest is slight. *See Asahi*, 480 U.S. at 114–16, 107 S.Ct. at 1034–35.

Under *World–Wide Volkswagen* we must also consider the interests of the "several States" in the efficient judicial resolution of the dispute and the advancement of substantive policies. There is no evidence that the interests of Florida or New Jersey would be better served depending upon where the case is heard. Nor is there evidence that Fiberfloat's interests are outweighed by Mesalic's interests.

Applying the standards of *Burger King* and *International Shoe* asserting jurisdiction in the present case does not violate notions of "fair play and substantial justice." Fiberfloat purposefully entered the State of New Jersey to carry out activities in an effort to repair Mesalic's boat. These actions are sufficient to distinguish those cases where the court found the contacts insufficient to assert personal jurisdiction.

In *Asahi*, the Court found that under the stream of commerce analysis, the contacts were insufficient to assert personal jurisdiction that would comport with traditional notions of fair play and substantial jus-

tice.[13] This is not a case where a severe burden is placed on an alien defendant as in *Asahi*. Nor does this case involve one isolated occurrence where the defendant had no connection with the forum state, as in *World–Wide Volkswagen*.[14] For its part, this court has held that unilateral contacts by the petitioner are not sufficient to satisfy minimum contacts. *Time Share Vacation Club*, 735 F.2d at 65. We are not dealing with unilateral acts on the part of Mesalic. Here, Fiberfloat directed several of its employees to perform repair work on Mesalic's boat in New Jersey. Fiberfloat's actions in New Jersey were sufficient such that it should reasonably have anticipated being haled into court in New Jersey. Finally, this case does not involve an action in which the defendant has had two unrelated stops in the forum state, as in *Kulko*.[15] This case involves a defendant who made several purposeful contacts in the forum state; contacts that are sufficient for the assertion of personal jurisdiction and which do not offend the notion of "fair play and substantial justice." [16]

## V.

For the foregoing reasons, the judgment of the district court will be reversed, and the case will be remanded for further proceedings consistent with this opinion.

**13.** Asahi is a Japanese manufacturer of tire valve assemblies which were sold to Cheng Shin, a tire manufacturer in Taiwan. Cheng Shin sought indemnification from Asahi after it settled a product liability action resulting from a motorcycle accident which occurred in California involving tires made with Asahi's valves.

**14.** In *World–Wide Volkswagen Corp.,* New York residents filed a products liability action against a non-resident auto retailer in Oklahoma where the accident occurred. The retailer had no connection with the forum state. 444 U.S. at 288, 100 S.Ct. at 562.

**15.** In *Kulko,* a child support action, the appellant's contacts with the forum state were limited to a three-day military stopover on his way to Korea and a 24–hour stopover on his return from Korean service. 436 U.S. at 93, 98 S.Ct. at 1697.

**16.** As an alternative ground, appellant here challenges the district court's denial of their motion to amend the complaint. The district court denied the Rule 15 motion to amend finding that it lacked jurisdiction to entertain the motion. However, now that we have personal jurisdiction, we assume that the district court will grant the right to amend.