602 A.2d 805

GEORGE NYERGES AND ANN NYERGES, PLAINTIFFS, v. JEFFREY E. LAVIGNE, M.D., LEONORA M. WEISSMAN, M.D., LASER MEDICAL ASSOCIATES, JOHN DOE, M.D. AND ABC, HEALTH CARE PROVIDER, FICTITIOUS NAMES WHOSE ACTUAL IDENTITY IS UNKNOWN TO PLAINTIFF AT THIS TIME, DEFENDANTS.

Superior Court of New Jersey
Law Division Union County

Decided November 8, 1991.

*Patricia A. D'Arcy* for plaintiffs (*Forman, Forman, Cardonsky, Andril & Ungvary*, attorneys).

*Dona Feeney* for defendants Jeffrey E. Lavigne, M.D. and Laser Medical Associates (*McDonough, Korn & Eichhorn*, attorneys).

ALLEY, J.S.C.

In this medical malpractice action, plaintiff George Nyerges alleges that he received negligent treatment in November 1989 from the moving defendants, Jeffrey E. Lavigne, M.D., and Laser Medical Associates. These defendants have moved to dismiss on the ground that the court lacks *in personam* jurisdiction over them. For the reasons set forth below, the motion is denied.

Defendant Lavigne is a resident of New York and sole proprietor of defendant Laser Medical Associates. Although licensed to practice in New Jersey, Lavigne asserts that he has never practiced in the State and that only about 2–3% of his surgical practice comes from New Jersey. His affidavit lays out in detail his alleged lack of New Jersey contacts, and in sum he contends that Nyerges, a New Jersey resident, affirmatively sought advice and travelled to New York for treatment from a New York doctor at a New York facility and that the moving defendants never purposefully availed themselves of the laws and benefits of New Jersey.

Plaintiffs assert, however, that defendants purposely sought to obtain patients from the tri-state area, including New Jersey. Plaintiff George Nyerges has shown that he went to defendants after reading an advertisement in the *Daily News* and telephoning them from New Jersey by way of a toll free "800" number (1–800–MD–TUSCH) advertised therein. Although the *Daily News* may be styled a New York paper, for purposes of this motion plaintiff has established that it has a large circulation in New Jersey—approximately 200,000 in 1989.

## Discussion.

A state court's assertion of personal jurisdiction over a defendant must comport with the due process requirements of the Fourteenth Amendment, for as noted in *International Shoe Co. v. Washington*, 326 *U.S.* 310, 66 *S.Ct.* 154, 90 *L.Ed.* 95 (1945):

Due process requires only that in order to subject the defendant to a judgment *in personam* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." [at 326, 66 *S.Ct.* at 163]

Our Supreme Court has addressed the question of a court's power to exercise personal jurisdiction over a non-resident defendant. In *Avdel Corp. v. Mecure*, 58 *N.J.* 264, 277 *A.2d* 207 (1971), the court in addressing the holding in *McGee v.*

*International Life Ins. Co.*, 355 *U.S.* 220, 78 *S.Ct.* 199, 2 *L.Ed.*2d 223 (1957), stated:

> It is clear from *McGee* that due process is satisfied if a contract sued upon has a "substantial connection" with the forum state. The interest of the forum state in the regulation of a special industry such as insurance may be a relevant factor in determining whether the state may constitutionally exercise jurisdiction, but it is only one factor. The absence of such an interest surely does not defeat jurisdiction, and the question remains whether the contact or contacts are sufficient to give the forum state a substantial connection with the contract such that maintenance of the suit does not offend principles of fairness. [58 *N.J.* at 270, 277 *A.*2d 207]

A subsequent New Jersey Supreme Court decision, *Charles Gendler & Co. v. Telecom Equipment Corp.*, 102 *N.J.* 460, 508 *A.*2d 1127 (1986), set forth the analytical approach to be taken in addressing questions of personal jurisdiction. The Court held that "the stream-of-commerce theory supports the exercise of jurisdiction ... [over a non-resident defendant if it] knew or should have known of the distribution system through which its products were being sold in the forum state." *Id.* at 480, 508 *A.*2d 1127. Although *Gendler* is not on all fours with the facts here, the minimum contacts test it discusses is indeed applicable.

■ The minimum contacts test insures the fairness and reasonableness of requiring nonresidents to defend lawsuits in forum states. Because of the importance of balancing the interests of both plaintiff and defendant, the test must not be applied mechanically. Rather, "the quality and nature of [defendant's] activity in relation to the fair and orderly administration of the laws" must be examined on a case-by-case basis to determine if the minimum contacts standard is satisfied. *Id.* at 470, 508 *A.*2d 1127.

■ The fundamental premise behind this due process limitation is to protect against defendant's liberty interest being subjected to the judgment of a jurisdiction where he has had no minimally sufficient contact. *Burger King Corp. v. Rudzewicz*, 471 *U.S.* 462, 105 *S.Ct.* 2174, 85 *L.Ed.*2d 528 (1985). The New Jersey Supreme Court further stated in *Gendler:*

As a result, the minimum-contacts test "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *Id.* A defendant is on notice that it is subject to suit when it "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws." *Hanson v. Denckla,* 357 *U.S.* 235, 253, 78 *S.Ct.* 1228, 1240, 2 *L.Ed.*2d 1283, 1298 (1958); *see, e.g., Burger King Corp. v. Rudzewicz, supra,* [471] *U.S.* at [472–73], 105 *S.Ct.* at 2182, 85 *L.Ed.*2d at 540–41; *World–Wide Volkswagen Corp. v. Woodson, supra,* 444 *U.S.* [286] at 297, 100 *S.Ct.* [559] at 567, 62 *L.Ed.*2d [490] at 501. It is the purposeful act of the defendant, not the unilateral activity of another who merely claims a relationship to the defendant, that connects the defendant to the forum. *Hanson v. Denckla, supra,* 357 *U.S.* [235] at 253, 78 *S.Ct.* [1228] at 1239–40, 2 *L.Ed.*2d [1283] at 1298. [102 *N.J.* at 470–471, 508 *A.*2d 1127]

Additionally, the Court observed:

Although the minimum-contacts test centers on the defendant's relationship with the forum state, the sufficiency of the contacts for jurisdictional purposes depends on "the relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner,* 433 *U.S.* 186, 204, 97 *S.Ct.* 2569, 2580, 53 *L.Ed.2d* 683, 698 (1977). When the cause of action arises out of the defendant's contacts with the forum state, it is more likely that the contacts will subject the defendant to the jurisdiction of the forum than if the cause arises from unrelated contacts. If the cause is related to the defendant's contacts with the forum state, an isolated act may be sufficient to subject the defendant to the jurisdiction of the forum .... If, however, the cause is unrelated to the defendant's contacts with the forum, a single act will less readily support the exercise of jurisdiction. *Co. v. Washington, supra,* 326 *U.S.* at 317–18, 66 *S.Ct.* at 159, 90 *L.Ed.* at 102–03. When the cause is unrelated, the defendant's contacts with the forum must be so continuous and substantial as to justify subjecting the defendant to jurisdiction. [*Id.* at 471–472, 508 *A.*2d 1127]

■ In determining whether a state has jurisdiction over a non-resident defendant, the court must engage in a two part test:

1. whether defendant has sufficient contacts with the forum state and,
2. whether the contacts in light of other factors comport with fair play and substantial justice. *Id.* at 472, 508 *A.*2d 1127.

■■ It appears that this case can be disposed of by considering plaintiff to be asserting the existence of "specific" jurisdiction. In long-arm jurisdictional matters such as this, there is a distinction between so called "general" and "specific" jurisdiction, the former being invoked if defendant has engaged in continuous and systematic contacts with the forum ("general"

jurisdiction can exist even if the specific claim does not arise out of contact with the forum), whereas "specific" jurisdiction only arises from defendant's contacts with the forum state relative to the claim in suit. *See, e.g., Provident National Bank v. California F.S.L. Assn.*, 819 *F.*2d 434, 437 (3 Cir.1987).

In *Makopoulas v. Walt Disney World*, 221 *N.J.Super.* 513, 516, 535 *A.*2d 26 (App.Div.1987), the court held that solicitations directed at New Jersey residents may supply the necessary jurisdictional contacts, and the plaintiff here contends that the moving defendants, through the toll-free number, directly and purposefully, solicited business from out of state and therefore are not without notice that they could be haled into our courts.

Defendant relies upon an unpublished opinion written by United States District Court Judge Dickinson R. Debevoise for the proposition that advertising does not constitute minimum contacts. That opinion, however, distinguished its facts from the facts in *Makopoulas, supra*, with Judge Debevoise indicating that the advertising in the case before him was "too attenuated to satisfy the minimum contacts test." *Valik v. Shellborne Corp.*, Civ. No. 90–869 (D.N.J. Nov. 27, 1990) at 8.

In the unpublished opinion, plaintiff sued a Vermont skiing establishment after she was injured there. The ski resort conceded that it advertised in New Jersey media, but asserted that such advertising fell short of requisite contacts. The court concluded that the only jurisdiction that might exist would be specific jurisdiction, as plaintiff was unable to show continuous and systematic activity of defendant in this state. Judge Debevoise refused, however, to find specific jurisdiction because there was "no direct contact between the plaintiff and agents of the defendant in New Jersey." *Id.* at 1–2. In summary, the court concluded that the directness of the solicitation was insufficient to find jurisdiction.

The facts here fall more in line with the *Makopoulas* case. In *Makopoulas*, the Appellate Division remanded the case for a finding whether the advertising done by defendant was effec-

tive in enticing plaintiff to visit its facility. *Makopoulas, supra,* 221 *N.J.Super.* at 519, 535 *A.*2d 26.

It is beyond legitimate dispute that moving defendants advertised in a newspaper having a substantial New Jersey circulation and which catered specifically to certain regions beyond the borders of New York. Further, defendants employed an "800" toll-free number to solicit and facilitate the attraction of business. This number served New Jersey. Defendants plainly intended to attract and treat patients from the area served by their toll-free number, including New Jersey, and in this case they succeeded in doing so.

These defendants reached into New Jersey to attract and induce plaintiff George Nyerges to use their services. After Nyerges' first visit to defendants, moreover, they mailed him several direct solicitations to his home in Rahway specifically suggesting that he tell his friends about defendants' services. Further, they gave him business cards to pass out. While these acts may not, in and of themselves, have created jurisdiction, they are important even if they serve only to disprove defendants' protestations concerning their intentions and activities on the subject of recruiting patients from New Jersey.

With respect to defendants' "800" number, evidence submitted by plaintiffs from the telephone company shows that the "201" area code (which in 1989 covered all of northern New Jersey) was included in the service areas they purchased. Defendants are curiously silent as to why they made no effort to obtain an "800" number that was limited so that it would not accept calls from New Jersey. Counsel did not dispute at oral argument that this would have saved defendants money, by avoiding charges for calls from areas (*e.g.*, New Jersey) that defendants purportedly did not wish to serve. Nyerges allegedly called defendants in New York from New Jersey, and defendants had not elected to exclude New Jersey from their "800" calling area.

Defendants certainly should not be surprised to be haled into the courts of New Jersey. It is not necessary here to consider whether general jurisdiction may exist, *i.e.*, whether defendants' activities were systematic and continuous, because plaintiffs have made a sufficient showing of the existence of minimum contacts for specific jurisdiction. As a result of these specific contacts, plaintiff George Nyerges allegedly suffered injury. Defendants, who sought to reap financial reward from New Jersey residents, cannot justly claim that it is unfair to be brought into the New Jersey courts to defend their activities. Defendants' motion to dismiss is denied.