**COMPOSITE MARINE PROPELLERS, INC., Plaintiff,**

v.

**Gerbrig VANDERWOUDE, et al., Defendants.**

**Civ. A. No. 89–2304–V.**

United States District Court, D. Kansas.

July 3, 1990.

John L. Vratil, William G. Howard, Lathrop, Koontz & Norquist, Overland Park, Kan., Daniel M. Dibble, Thomas S. Stewart, Douglas R. Dalgleish, Kansas City, Mo., for plaintiff.

John V. Patton, Jack L. Brooks, Bozeman, Neighbour, Patton & Noe, Moline, Ill., Brett C. Coonrod, Deacy & Deacy, Prairie Villag, Kan., Edward W. Mullen, Deacy & Deacy, Kansas City, Mo., for defendants.

## MEMORANDUM AND ORDER

VAN BEBBER, District Judge.

This is a diversity of citizenship action brought by plaintiff Composite Marine Pro-

pellers, Inc., a Kansas corporation, seeking to recover damages for breach of contract and to enjoin defendants from further misappropriation and misuse of certain trade secrets. The matter now comes before the court on defendants' motion to dismiss for lack of personal jurisdiction and insufficiency of service of process (Doc. 88).[1] Fed.R. Civ.P. 12(b)(2) and (4). Plaintiff opposes the motion and has filed suggestions in opposition to it (Doc. 99). The court has reviewed the motion and accompanying briefs, and is now prepared to rule.

At the outset it must be noted that when the existence of personal jurisdiction is controverted, plaintiff need only make out a *prima facie* case that the constitutional and statutory requirements for the assumption of personal jurisdiction are satisfied. *Carrothers Const. Co. v. Quality Service & Supply*, 586 F.Supp. 134, 135–36 (D.Kan.1984). The parties may submit affidavits and other documentary evidence for the court's consideration. *Slawson v. Hair*, 716 F.Supp. 1373, 1374 (D.Kan.1989). The court accepts allegations in the Complaint as true to the extent that they are uncontroverted by submitted affidavits. *Behagen v. Amateur Basketball Ass'n of USA*, 744 F.2d 731, 733 (10th Cir.1984), *cert. denied*, 471 U.S. 1010, 105 S.Ct. 1879, 85 L.Ed.2d 171 (1985). When conflicting affidavits are presented, factual disputes are resolved in plaintiff's favor, and the plaintiff's *prima facie* case may thus survive the defendant's motion. *Behagen*, 744 F.2d at 733. Plaintiff is also entitled to the benefit of any factual doubt. *Ammon v. Kaplow*, 468 F.Supp. 1304, 1309 (D.Kan. 1979).

As developed by documentary evidence, the context in which this claim arose and the critical jurisdictional facts, construed in favor of the plaintiff, are as follows. Sometime in 1983 or earlier, Lee Vriezalaar, owner of Lee's R & D, an Iowa corporation, invented the composite marine propeller. Defendant Gerbrig VanDerWoude, a specialist in the injection molding of plas-

1. Defendants filed a similar motion on July 21, 1989 (Doc. 24), that is, as yet, unresolved. We find that the present motion supersedes the for-

mer and that this memorandum and order disposes of both motions.

tics, assisted Vriezalaar in the development of the composite marine propeller. Although the development of the composite marine propeller was an unqualified success, its marketing was somewhat unspectacular.

In early 1987, Vriezalaar died. At that time, defendant VanDerWoude was associated with defendants Charles H. Whitmore and Injections Structural Plastics, Ltd. ("ISPL"). ISPL attempted to purchase Lee's R & D from Vriezalaar's estate in order to continue the development of composite marine propellers. However, plaintiff Composite Marine Propellers, Inc., purchased Lee's R & D. Plaintiff then reached an agreement with ISPL whereby ISPL would manufacture composite marine propellers for plaintiff utilizing the injection molding process.

Plaintiff, in order to protect its proprietary information, trade secrets and confidential data, obtained a written Nondisclosure and Noncompetition Agreement from ISPL. The Agreement was drafted and signed by defendant Whitmore as a representative of ISPL. Defendant VanDerWoude, as an ISPL employee, was aware of the Agreement, but he did not sign it, and there is some question as to whether he was a party to it.

The Agreement acknowledged, among other things, that plaintiff was in possession of highly valuable, confidential proprietary information and trade secrets. It provided that ISPL and ISPL employees would: (a) not use or disclose plaintiff's proprietary information for two years following the termination of the contract; (b) not directly or indirectly engage in a competing business for two years; and (c) first offer any developmental improvement conceived by ISPL or ISPL employees pursuant to a licensing agreement contained in the Agreement.

During the time of cooperation between ISPL and plaintiff, ISPL was a small, closely held corporation owned by Roy Van Der Kamp and defendant Whitmore. Defendant VanDerWoude was one of ISPL's few employees, and was responsible for manufacturing plaintiff's composite marine pro-

pellers. Eventually, through the acquisition of company stock, defendant VanDerWoude became the principal owner of ISPL.

In the spring and summer of 1988, defendants VanDerWoude and Whitmore left ISPL. They, with some financial backing, organized defendant VanDerWoude Plastics Corporation ("VPC"), and incorporated it in the State of Illinois in July, 1988. The purpose of VPC was the manufacturing and marketing of an improved composite marine propeller that defendant VanDerWoude allegedly developed. Defendant VPC named its new propeller the "Phantom."

About that same time, defendants Advanced Plastic Technology, Ltd. ("APT"), T.S. Moore & Associates, Inc. ("TSM"), and Paul Lancour d/b/a PFL Tooling and Machinery ("PFL") joined to form defendant Advanced Plastics Partnership ("APP"), an Illinois general partnership, for the purpose of producing and marketing the "Phantom" propeller. Defendant VPC, however, remained principally responsible for manufacturing the "Phantom." Apparently neither defendant APP nor any of APP's partners were parties to the Nondisclosure and Noncompetition Agreement existing between plaintiff and ISPL.

The "Phantom" has been advertised and offered for sale in Kansas and throughout the United States via two national trade magazines—*Motorboat* and *Trade Only*. APP's partners have also generated at least one national press release extolling the virtues of the "Phantom" propeller. Defendants also admit that Dow Chemical has instituted a nationwide promotional campaign on behalf of the "Phantom." Although defendants have received orders for the "Phantom," it is unknown how many, if any, were ordered by Kansas residents, or how many were ordered nationwide as a result of defendants' marketing strategies.

In conjunction with the national advertising of the "Phantom," defendants have a "1–800" telephone number. The number is accessible to Kansas residents as well as the rest of the United States. The purpose of the "1–800" number is to sell and dis-

tribute the "Phantom" to the public. The "1–800" number reaches defendants' joint offices in Moline, Illinois, and is answered by their receptionist. It is unknown how many orders are received by defendants as a result of their "1–800" number, or how many Kansas residents have ordered the "Phantom" in this manner.

As a result of the actions of defendants VanDerWoude, Whitmore, VPC, APP, APT, TSM and PFL, plaintiff filed a Complaint (and later an Amended Complaint) in this court alleging in eight counts that defendants misappropriated its proprietary information, trade secrets, and confidential data and that defendants thereby breached the contract with plaintiff and breached a fiduciary duty owed to plaintiff. Plaintiff now seeks compensatory damages, injunctive relief, an "Equitable Accounting," and punitive damages.

Plaintiff, in its opposition to defendants' motion, alleges that jurisdiction over defendants exists pursuant to the Kansas long arm statute, K.S.A. 60–308. The specific statutory provisions relied upon by plaintiff provide as follows:

> (b) Submitting to jurisdiction—process. Any person, whether or not a citizen or resident of this state, who in person or through an agent or instrumentality does any of the acts hereinafter enumerated, thereby submits the person and, if an individual, the individual's personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of these acts:
>
> (1) The transaction of any business within this state;
>
> (2) The commission of a tortious act within this state;
>
> .    .    .    .    .
>
> (5) Entering into an express or implied contract, by mail or otherwise, with a resident of this state to be performed in whole or in part by either party in this state ...

Plaintiff argues that defendants transacted business in Kansas by marketing the "Phantom" in Kansas and by misappropriating trade secrets of a Kansas corporation pursuant to subsection (b)(1). Plaintiff next argues that defendants committed a tort in Kansas because the economic harm it suffered occurred in Kansas pursuant to subsection (b)(2). Plaintiff also argues that the contract with defendants was to be partially completed in Kansas pursuant to subsection (b)(5).[2]

Defendants refute plaintiffs' contentions by asserting that they lack the necessary "minimum contacts" with Kansas necessary to subject them to personal jurisdiction and service of process under the Kansas long arm statute. They assert that plaintiff initiated contact with ISPL and that plaintiff signed the Nondisclosure and Noncompetition Agreement with ISPL in Illinois. The court also recognizes that defendants APT, TSM, PFL, and APP were not parties to that contract. It is further undisputed by plaintiff that defendants are Illinois residents who are not licensed to do business in Kansas; that defendants maintain no offices or places of business in Kansas; that defendants have no agents or representatives here; and that defendants have never physically entered this state with regard to the parties' transactions.

■■■ The federal court in a diversity action determines whether personal jurisdiction over nonresident defendants is obtainable under the law of the forum state. *Rambo v. American Southern Ins. Co.,* 839 F.2d 1415, 1416 (10th Cir.1988). In Kansas, the issue of personal jurisdiction is determined from a two-step analysis. First the court assesses whether the defendant's conduct falls within one of the provisions of the Kansas long-arm statute, K.S.A. 60–308(b). Second, it is decided whether the exercise of jurisdiction comports with due process requirements. *Slawson v. Hair,* 716 F.Supp. at 1375. The Kansas long arm statute is liberally construed to assert per-

---

**2.** Plaintiff also argues that K.S.A. 60–308(b)(7) would make defendants subject to jurisdiction in this district. However, subsection (b)(7) applies only to products liability cases. *Ling v.*

*Jan's Liquors,* 237 Kan. 629, 631, 703 P.2d 731 (1985). We therefore conclude that subsection (b)(7) is inapplicable to the present case.

sonal jurisdiction over nonresident defendants to the full extent permitted by the due process clause of the Fourteenth Amendment to the U.S. Constitution. *Volt Delta Resources, Inc. v. Devine,* 241 Kan. 775, 777, 740 P.2d 1089 (1987). Because the prongs are coextensive in this case, we shall only consider whether our assumption of personal jurisdiction in this case would comport with the requirements of due process. *See Equifax Services, Inc. v. Hitz,* 905 F.2d 1355, 1357–58 (10th Cir.1990).

The exercise of personal jurisdiction over nonresident defendants comports with the requirements of due process if they had certain "minimum contacts" with that forum such that the prosecution of the suit "does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). To have minimum contacts, the defendants must have a *fair* warning of being subject to jurisdiction—that is, the defendants' activities are "purposefully directed at residents of the forum and the litigation arises from or relates to those activities." *Burger King v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1984).

A second aspect of minimum contacts is foreseeability, expressed as "that the [defendants'] conduct and connection with the forum State are such that they should *reasonably* anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980) (emphasis supplied). In making this determination, courts have assessed whether the defendants purposefully avail themselves of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. *Burger King,* 471 U.S. at 475, 105 S.Ct. at 2183.

■ Therefore, under due process analysis, a court must look to the "quality and

nature" of the defendants' activity to determine whether it is both "reasonable" and "fair" to require the defendants to conduct their defense in the forum state. *Thermal Insulation Systems v. Ark–Seal Corp.,* 508 F.Supp. 434, 442 (D.Kan.1980). In every case there must be some act by which the defendants purposefully avail themselves of the privilege of conducting business or other activities in the forum State, thus invoking the benefits and protections of the laws. *Burger King,* 471 U.S. at 475, 105 S.Ct. at 2183; *see, Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). Actual physical contacts by defendants with the forum state are not required. *Pedi Bares, Inc. v. P & C Food Markets, Inc.,* 567 F.2d 933 (10th Cir.1977); *Rosedale State Bank and Trust Co. v. Stringer,* 2 Kan.App.2d 331, 333, 579 P.2d 158 (1978).

The Tenth circuit recently stated that when "specific jurisdiction [3] is based upon a contractual dispute, we must evaluate prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing ... in determining whether the defendants purposefully established minimum contacts with the forum." *Equifax Services, Inc.,* 905 F.2d at 1357, (*quoting, Burger King,* 471 U.S. at 479, 105 S.Ct. at 2185). The Tenth Circuit also notes that "parties who reach beyond one state are subject to regulation and sanctions in the other state for the consequences of their activities." *Id.* If defendants' actions cause foreseeable injuries in another state, it is "at the very least, presumptively reasonable for [the defendants] to be called to account for such injuries." *Id.*

■ In their motion defendants argue that the requirements of due process have not been met in the instant case because minimum contacts have not been shown. The only contacts alleged are the advertisements in the two national trade magazines, the "1–800" telephone number accessible to

---

**3.** This is a case of specific jurisdiction because this litigation arises out of or is related to defendants' alleged contacts with a Kansas corporation. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 1872 n. 8, 80 L.Ed.2d 404 (1984). In any event, plaintiff concedes the fact that there are insufficient contacts in this case for the court to exercise general jurisdiction over defendants.

Kansas residents, and the contract between ISPL and a Kansas resident. Defendants maintain that these contacts are insufficient to warrant an assertion of personal jurisdiction.

We conclude that defendants' advertising and marketing strategy provides, at best, only tangential support for the assertion of personal jurisdiction. We have no evidence of the extent of defendants' solicitation in *Motorboat* or *Trade Only* magazines, nor do we know how much business the corporation derives from its national advertising. There is no evidence that shows that defendants specifically targeted Kansas residents in its advertisements, or aimed its product at Kansas residents. There is no evidence that defendants sold any propellers in Kansas. Therefore, there is no basis to conclude that the advertisements were sufficient to establish minimum contacts with this forum. *See Mesalic v. Fiberfloat Corp.*, 897 F.2d 696, 700 (3d Cir. 1990); *also, Makopoulos v. Walt Disney World*, 221 N.J.Super. 513, 535 A.2d 26 (1987). We also consider "1–800" numbers that are accessible to Kansas residents, absent something more, as insufficient to establish minimum contacts under the same rationale.

■ We also conclude that defendant ISPL's contract with plaintiff cannot *alone* justify personal jurisdiction over defendants Whitmore, VanDerWoude or VPC in Kansas.[4] *Burger King*, 471 U.S. at 478, 105 S.Ct. at 2185; *Equifax Services*, 905 F.2d at 1358. Therefore, we must look to the prior negotiations and contemplated future consequences, along with the terms of the contract and parties' actual course of dealing. *Equifax Services*, 905 F.2d at 1357–58. Analyzing these factors in light of the established facts, we find in the record before us a total absence of those affiliating circumstances that are a necessary predicate to any exercise of personal jurisdiction in this court. ISPL and defendants Whitmore and VanDerWoude did not reach beyond their state and initiate the negotiations with plaintiff. The Nondisclosure and Noncompetition Agreement was entered into and signed in Illinois. There is no evidence of correspondence between the parties or the parties' course of dealings with respect to this contract. There is thus no evidence that ISPL or defendants Whitmore, VanDerWoude or VPC purposefully availed themselves of the privileges and benefits of the laws and protections of the State of Kansas. Therefore, plaintiff's contract with ISPL, in this case, is insufficient to demonstrate that defendants established minimum contacts with this forum whereas it would be both fair and reasonable to exercise personal jurisdiction over them in this court.

Because plaintiff has failed to show that personal jurisdiction over defendants would comport with the requirements of the U.S. Constitution, we conclude that plaintiff has failed to create a *prima facie* case of personal jurisdiction in this case. Therefore, we conclude that personal jurisdiction in this court is lacking as to all defendants in this matter.

Although we are empowered to dismiss this case for want of personal jurisdiction, we do not think it is in the interest of justice to do so. Congress in 28 U.S.C. § 1631 has given the district court the authority and the discretion to transfer a matter improperly brought in its jurisdiction to another jurisdiction in which it could have been brought in the first place. 28 U.S.C. § 1631 provides:

**§ 1631. Transfer to cure want of jurisdiction**

Whenever a civil action is filed in a court ... and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action ... to any other such court in which the action ... could have been brought at the time it was filed ... for the court to which it is transferred on the

---

**4.** We note that defendants APT, TSM, PFL and APP were not parties to the contract between ISPL and plaintiff and that the analysis in this paragraph does not apply to them. There is also some question as to whether defendants Whitmore, individually, VanDerWoude, or VPC were parties to the contract. However, for the purposes of this analysis we will assume that they were.

date upon which it was actually filed in ... for the court from which it is transferred.

Because this action could originally have been brought in the Central District of Illinois, and because we deem it to be in the interest of justice to do so, we hereby transfer this action to the Central District of Illinois.

We finally note that even if jurisdiction was proper in this court we would transfer the case to the Central District of Illinois. 28 U.S.C. § 1404(a). Under the facts presented, we find that the availability of witnesses, the accessibility of relevant evidence, and the convenience to the defendants are much greater in the Central District of Illinois. We further find that it would not be unreasonable or unjust for plaintiff to pursue this action in Illinois. The Central District of Illinois is an appropriate forum to hear this case, and plaintiff would not be unfairly disadvantaged in vindicating its rights there. Because we find that it would be for "the convenience of parties and witnesses" and would be "in the interests of justice," we would transfer the case to the Central District of Illinois under 28 U.S.C. § 1404(a) even if we concluded that we had jurisdiction over defendants in this case.

IT IS, THEREFORE, BY THE COURT ORDERED that this matter as against all defendants be transferred pursuant to 28 U.S.C. § 1631 to the Central District of Illinois for all further proceedings.

IT IS SO ORDERED.